IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| EQUAL EMPLOYMENT | ) | |
|---|---|---|
| OPPORTUNITY COMMISSION, | ) | |
| | ) | |
| | ) | CIVIL ACTION NO. |
| Plaintiff, | ) | |
| | ) | **COMPLAINT** |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL DEMAND** |
| | ) | |
| TREATMENT CENTERS, LLC | ) | |
| DBA LEXINGTON TREATMENT | ) | |
| ASSOCIATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____) | | |

## I. NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of race, African American, and to provide appropriate relief to Allen Parson ("Parson"), Marquita Williams ("Williams"), LaFonda Bruinton ("Bruinton"), and other similarly situated current and former African American employees who were adversely affected by such practices. As alleged with greater particularity below, the Equal Employment Opportunity Commission ("EEOC" or the "Commission") alleges that Treatment Centers, LLC d/b/a Lexington Treatment Associates ("Defendant") discriminated against Parson, Williams, Bruinton, and other similarly situated current and former African

1

American employees by subjecting them to a hostile work environment based on race, African American.

## II. JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3) ("Title VII") and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were and are now being committed within the jurisdiction of the United States District Court for the Middle District of North Carolina.

## III. PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission, is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4. At all relevant times, Defendant has continuously been a Delaware corporation doing business in the State of North Carolina and the City of Lexington and has continuously had at least 15 employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title

VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## IV. ADMINISTRATIVE PROCEDURES

6. More than thirty days prior to the institution of this lawsuit, Parson filed a charge with the Commission alleging violations of Title VII by Defendant.

7. On March 7, 2019, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that Title VII was violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

8. The Commission engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Letter of Determination.

9. The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

10. On April 29, 2019, the Commission issued to Defendant a Notice of Failure of Conciliation.

11. All conditions precedent to the institution of this lawsuit have been fulfilled.

## V. STATEMENT OF CLAIMS

12. As described in greater detail below, from at least in or around February 2017 through at least July 2018, Defendant engaged in unlawful employment practices at its Lexington, North Carolina facility ("the Facility") in violation of Section 703(a)(1) of

Title VII, 42 U.S.C. 2000(e)-(2)(a)(1).

13. Specifically, from at least in or around February 2017 to at least July 30, 2018, Defendant subjected Parson, Williams and Bruinton (Williams and Bruinton are referred to herein collectively as "Class Claimants"), as well as other similarly situated current and former African American employees at the Facility to unwelcome, severe or pervasive comments and/or conduct that created a hostile work environment at the Facility based on the employees' race, African American.

14. For example, between around February 2017 and July 30, 2018, several white clients at the Facility used racial slurs, including "nigger," concerning, toward, and/or in the presence of Parson and the Claimants.

15. From around February 2017 through at least around July 30, 2018, several white clients openly used racial slurs and/or made derogatory racial comments against African Americans at the Facility, including in the presence of the Program Director for the Facility (the "Program Director").

16. From around February 2017 through at least July 30, 2018, Defendant maintained a practice of making assignments of counselors to clients to accommodate clients' racial preferences.

17. From around February 2017 through at least July 30, 2018, the Program Director granted white clients' requests that they not be assigned African American counselors on at least three occasions.

18. The practice of making race-based counselor assignments in response to the

4

requests of white clients contributed to the hostile work environment that existed for African American employees at the Facility.

### *Harassment Allegations Specific to Allen Parson*

19. Defendant hired Parson as a Substance Abuse Counselor at the Facility in or around February 2017.

20. As a Substance Abuse Counselor, Parson was assigned to counsel clients as part of the clients' participation in Defendant's methadone treatment program. Parson spent much of his work day counseling and assisting clients.

21. Parson's direct supervisor was the Program Director.

22. In or around November 2017, the Program Director told Parson she was going to reassign a white male client ("Client One") from Parson to another counselor.

23. The Program Director specifically told Parson that she was making the reassignment because Client One said he did not want to have a "nigger" (referring to Parson) as his counselor.

24. The Program Director reassigned Client One to a white Substance Abuse Counselor, in accordance with Client One's request.

25. Defendant took no action to address Client One's use of the term "nigger" when referring to Parson.

26. Prior to January 2018, Defendant instructed employees to notify clients that children should not be in the Facility without wearing shoes.

27. On or about January 10, 2018, Parson instructed a white male client

5

("Client Two"), to pick the client's barefoot child up off of the floor of the Facility lobby.

28. In response, Client Two called Parson "nigger" at least three times.

29. Client Two also called Parson other obscenities and threatened to physically assault Parson.

30. Later that same day, in or around January 2018, Parson discussed with the Program Director the fact that Client Two had called Parson "nigger" and had threatened to physically assault Parson.

31. The Program Director took no action to address Client Two's conduct toward Parson, including his calling Parson "nigger" and threatening physical violence toward Parson.

32. Client Two's racial comments and threatening conduct to which Parson was subjected were severe as they included the repeated use of the term "nigger" while also being threatened with physical assault.

33. Client Two's racial comments and physically threatening conduct were offensive, uninvited, and unwelcome to Parson.

34. Parson was aware of other racially offensive comments and/or conduct towards or about African Americans that occurred in the Facility and was not addressed by Defendant.

35. From around February 2017 to at least July 30, 2018, the Program Director granted clients' race-based requests for care provider reassignments on at least three occasions.

36. The racial comments and/or conduct, physically threatening conduct, and race- based assignments described herein created a hostile work environment for Parson based on his race, African American.

*Harassment Allegations Specific to Marquita Williams*

37. Williams began working as a Licensed Practical Nurse at the Facility in or around August 2014.

38. Williams heard clients use "nigger" as early as her first month of employment at the Facility.

39. While white clients openly and routinely used "nigger" throughout Williams's employment at the Facility, client use of the term "nigger" became more frequent between around February 2017 to around May 2018.

40. Williams transferred to a different facility in or around May 2018.

41. During Williams's period of employment at the Facility, a white female client ("Client Three") in the patient lobby referred to Williams as a "nigger bitch."

42. During Williams's period of employment at the Facility, a white male client, ("Client Four"), regularly made racially offensive statements and/or engaged in racially offensive verbal assaults toward Williams or in Williams's presence.

43. Client Four verbally assaulted Williams at least once a week when Client Four was in the lobby or at the patient dosing window of the Facility.

44. During each verbal assault of Williams, Client Four used "nigger" multiple times.

45. During at least one of the verbal assaults, Client Four made statements such as: "niggers" need to be exterminated; mixed race children need to be exterminated; there was a "nigger" president; and someone needed to get rid of the monkey in the White House.

46. On at least one occasion, Client Four approached the patient dosing window behind which Williams was working and stated "nigger" counselors were taking over.

47. During at least one of Client Four's verbal assaults, Williams was left physically shaking. After Client Four left for the day, Williams cried.

48. Following one of Client Four's verbal assaults, Williams told the Program Director that Client Four had used "nigger" multiple times and said "niggers" should be exterminated.

49. Upon information and belief, before Williams told the Program Director about Client Four's specific statements, the Program Director knew or should have known of Client Four's frequent use of "nigger" and/or Client Four's verbal assaults on African American employees.

50. The Program Director took no action in response to Williams's complaint.

51. Client Four's verbal assaults continued until Defendant discharged Client Four from its treatment program for reasons unrelated to Client Four's use of racial epithets.

52. Between around 2017 and May 2018, Williams heard "nigger" used more

than five times a month by different white clients.

53. Between around 2017 and May 2018, white clients called Williams and other African American employees, "nigger."

54. In or around early January 2018, Williams asked Client Two[1] to put shoes on his child. Client Two called Williams "nigger bitch."

55. In the spring of 2018, a white male client ("Client Five") referred to a African American physician as "nigger" in Williams's presence.

56. Upon information and belief, the Program Director heard Client Five refer the physician as "nigger" and took no action to stop the harassment.

57. The racial comments and/or conduct to which Williams was subjected were severe and/or pervasive as it included repeat use of "nigger."

58. The racial comments and/or conduct to which Williams was subjected was offensive and unwelcome to Williams.

59. The racial comments and/or conduct described herein created a hostile work environment for Williams based on her race, African American.

*Harassment Allegations Specific to Lafonda Bruinton*

60. LaFonda "Lewis" Bruinton began working at Defendant's Facility in or around January 2018 as a Substance Abuse Counselor.

61. On or about January 10, 2018, Bruinton heard Client Two call Parson "nigger" and physically threaten Parson.

---

[1] Client Two is also discussed *supra* as part of the allegations specific to Parson.

9

62. In or around March or April 2018, Bruinton heard at least one of Client Four's racist verbal assaults.

63. Specifically, Bruinton heard Client Four refer to African American employees at the Facility as all these "niggers" and use "nigger" at least twice.

64. During Bruinton's employment, a client's white family member called Bruinton a colored man.

65. Bruinton reported the family member's use of "colored" to the Clinical Supervisor.

66. The Clinical Supervisor took no action in response to Bruinton's complaint.

67. The racial comments and/or conduct to which Bruinton was subjected were severe and/or pervasive as it included repeat use of "nigger" and/or other racial slurs.

68. The racial comments and/or conduct were offensive and unwelcome to Bruinton.

69. The racial comments and/or conduct described herein created a hostile work environment for Bruinton based on his race, African American.

70. The effect of the practices complained of above has been to deprive Parson, Williams, Bruinton, and other similarly situated current and former African American employees of equal employment opportunities and otherwise adversely affect their status as employees, because of their race, African American.

71. The unlawful employment practices complained of above concerning Parson, Williams, Bruinton, and other similarly situated current and former African American employees were and are intentional.

72. The unlawful employment practices complained of above were and are done with malice or with reckless indifference to the federally protected rights of the Parson, Williams, Bruinton, and other similarly situated current and former African American employees.

## **PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from maintaining a racially hostile work environment, assigning, making race-based work assignments to accommodate clients' racial preference, and from retaliating against employees who oppose unlawful discrimination, make a charge of unlawful discrimination, or participate in an investigation of unlawful discrimination.

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for African Americans and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to make Parson, Williams, Bruinton and all other similarly situated current and former African American employees of Defendant whole, by providing compensation for past and future pecuniary losses resulting from the unlawful

11

employment practices described above, including out of pocket expenses, in amounts to be determined at trial.

D. Order Defendant to make Parson, Williams, Bruinton, and all other similarly situated current and former African American employees of Defendant whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, loss of self-esteem and loss of civil rights, in amounts to be determined at trial.

E. Order Defendant to pay Parson, Williams, Bruinton, and all other similarly situated current and former African American employees of Defendant punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

F. Grant such further relief as the Court deems necessary and proper in the public interest.

G. Award the Commission its costs of this action.

## **JURY TRIAL DEMAND**

The Commission requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted this the 11th day of September, 2019.

        EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

        JAMES L. LEE
        Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel
Equal Employment Opportunity Commission
131 M Street, NE
Washington, D.C. 20507

**/s/ Lynette A. Barnes**
LYNETTE A. BARNES (N.C. Bar No. 19732)
Regional Attorney

**/s/ Ylda Marisol Kopka**
YLDA MARISOL KOPKA  (Ill. Bar No. 6286627)
Supervisory Trial Attorney


**/s/ Yolanda W. Brock**
YOLANDA W. BROCK
(N.C. Bar No. 36651)
Senior Trial Attorney
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Charlotte District Office
129 W. Trade St., Suite 400
Charlotte, NC 28202
Tel: (704) 954-6463
Fax: (704) 954-6412
Email: yolanda.brock@eeoc.gov

**ATTORNEYS FOR PLAINTIFF**

13

Case 1:19-cv-00933-TDS-JEP    Document 1    Filed 09/11/19    Page 13 of 13